JOHN E. ANDREWS AND BENJAMIN T. KISSAM, EXECUTORS, ETC., OF GEORGE W. COSTER, DECEASED, RESPONDENTS, *v.* THE NEW JERSEY STEAMBOAT COMPANY, APPELLANT.

*Damages for conversion of property — when the amount thereof may depend upon the intent of the wrongdoer — when the question of intent should be submitted to the jury.*

The plaintiffs brought this action to recover damages for the conversion of their two-tenths interest in a steamboat known as the "Francis Skiddy," which was, in 1864, engaged in running between Troy and New York. On her last downward trip for that year she struck upon a rock and was so badly damaged that, to prevent her from sinking, she was run upon the shore and stranded. A few days thereafter the defendant, the owner of the other eight-tenths of the vessel, without consulting or notifying the plaintiffs took the machinery and other portions of the vessel and converted them to its own use, and sold the hull and received the proceeds thereof. The plaintiffs claimed and evidence was given tending to show that the vessel could have been raised, floated to a dock and repaired, at a cost not exceeding $5,000, and would then have been a valuable property. The defendant claimed

that, owing to the doubt whether the vessel could be raised before the river was closed by ice, in which case she would have been destroyed by the ice and floods, it deemed it wiser to take out the machinery and dispose of the hull at the best price it could obtain. The principal question was whether the defendant was to be held liable as for the conversion of a valuable steamboat slightly damaged, but easily repairable, or whether it was to be held liable only for the conversion of the articles and machinery taken from it.

*Held,* that the decision of this question turned upon the intent with which the defendant took possession of the vessel, and that the court erred in taking the question of intent from the jury.

APPEAL from a judgment in favor of the plaintiffs, entered on the verdict of a jury and from an order denying a motion for a new trial made on the minutes of the justice before whom the action was tried.

This action was commenced in the month of November, 1865, and was originally brought in equity to have the plaintiffs declared part owners of a steamboat called the "Dean Richmond." The issue as then framed was referred to the late Mr. Nichols who dismissed the complaint. Upon appeal from this judgment the General Term whilst sustaining the referee in his conclusions that the plaintiffs should not be declared part owners of said boat, yet held that there was sufficient in the complaint and evidence to justify the recovery of damages. The case is reported in 11 Hun's Reports, at page 490.

After this decision the complaint was amended so as to transform the action to one at law for damages caused to the plaintiffs by the act of defendant in converting the steamboat "Francis Skiddy," of which the plaintiffs were the one-fifth owners, the defendant being the owner of the four-fifths of said boat. The issue raised in this action was tried before Mr. Justice VAN BRUNT and a jury in the month of February, 1879, when a verdict was rendered for the plaintiffs in the sum of $58,455.81 damages and interest.

*John R. Dos Passos* and *Chas. Jones,* for the appellant.

*William Allen Butler,* for the respondents.

DAVIS, P. J.:

This action is brought to recover damages for the conversion of the property of the plaintiffs in the steamboat Francis Skiddy.

The plaintiffs and the New Jersey Steam Navigation Company were the owners of the Skiddy, the company owning eight-tenths and the plaintiffs two-tenths. In September, 1864, the New Jersey Steam Navigation Company sold all its interest in the steamboat to the defendant and received a certain amount of the defendants' stock in payment. The Skiddy was to be delivered under the sale at the close of navigation of that season. She was then employed in plying on the Hudson river, between New York and Troy, in a line of steamboats known as the Troy line, and its business, as appears from the evidence, was a profitable one. On her last downward trip, at a point a short distance below Albany, the Skiddy struck upon a rock which broke in several planks of her outside hull known as her "sponsons," through which she rapidly filled with water, and to prevent her sinking in deep water she was, as speedily as possible, run ashore and stranded on the flats of the river where she remained in a partially sunken condition. Notice was given to the defendant of her condition on the following day, which was Saturday, and on Monday following the defendant took possession of her where she lay. It is not claimed that the injuries she received by running on the rock were not purely accidental, nor that the stranding of her in the manner in which she was run upon the flats, was not a judicious and necessary mode of saving her with her passengers and cargo from sinking in deep water. There was nothing, therefore, in these acts in the nature of a conversion of the interest of the plaintiffs in the boat.

The theory of the case on the part of the plaintiffs is in substance that the defendant had, previously to the time of the injury to the boat, resolved after the close of navigation to take out her engine, which it is claimed was a peculiarly valuable one, for the purpose of putting it into a new and much larger boat, to be constructed for their separate use and called the "Dean Richmond," and to fit up the Skiddy for future use with a cheaper and smaller engine; but that when they learned of the injury to and stranding of the boat, they abandoned the idea of refitting her and resolved to take her to pieces so far as practicable where she lay and to sell her hull and apply her engine and whatever else could be taken from her and the proceeds of sale, to their own use, without consulting or respecting the rights of the plaintiffs, and without

regard to the question whether the boat could be raised and repaired.

On the part of the defendant the theory of the case is that the injury was of such a character, and occurred at so late a season of the year, that the boat could not, with reasonable care and prudence, be raised before the navigation of the river at that point would be closed by ice; in which case it would be impossible to raise her, and she would remain exposed to destruction, and probably be destroyed by the ice and floods of the winter and spring; and that therefore they concluded the better course would be to dismantle her, take out her engine and machinery so far as possible, and dispose of her hull where it lay for such price as they could obtain. It is hardly questioned in the case but that the injuries to the boat were of such a character that she could easily have been raised, floated to a dock and repaired at an expense of not exceeding $5,000, at any other season of the year. But it is insisted by the defendant that the lateness of the season rendered the effort to do so, so dangerous and doubtful in its results, that it was justified in saving what was possible from the boat instead of attempting to raise her. The plaintiffs were neither consulted nor notified as to what was done, and had no opportunity, as it appears, to concur in or dissent from the action of the defendant. The mere act of taking possession of the boat by the defendant would not be a conversion *per se*. As the owner of eight-tenths, and entitled to possession under its purchase, the defendant was lawfully entitled to take possession of the boat when the further ability to navigate her had been effectually terminated by the injury she had received.

There is no question made, apparently, on the part of the defendant but that the machinery and other parts of the boat which were taken from her by its agent, and brought to the city of New York, were afterwards so converted and used by the defendant that it became liable to the plaintiffs for the value of their property therein, and in the hull in the condition in which it was when sold. But the question litigated and contested is as to the time when such conversion took place, and the condition of the property at that time; on the one hand it being claimed that the defendant had unlawfully taken and converted the property of the plaintiffs in a valuable steamboat, which had received only a temporary injury which could be easily repaired, and was in such condition that her value as a

.steamboat substantially remained; and on the other hand that the defendant had only taken possession of the boat after she had been injured and stranded, and while her condition was such, owing to the lateness of the season, as rendered the experiment of raising and removing her too hazardous to be justifiable; and that their action in dismantling her was taken in good faith to save as much of value as possible before she could be utterly wrecked by her continued exposure.

It seems to us that there can be no doubt that if the defendant took possession of the boat with the fixed intent of destroying her as such, and taking possession and removing everything appertaining to her that could be carried away, and selling what remained for their own benefit, regardless of the rights of the plaintiffs as well as of the question whether the boat could be raised and repaired, those acts would be a conversion of the plaintiffs two-tenths of the property for the value of which this action will lie.

It is very true that this question of intent is strongly colored by the neglect of the defendant to consult with the plaintiffs touching the disposition of the boat, and by their subsequent conduct in converting everything that was taken from her to their own use. But those facts were not, as it seems to us, sufficient to resolve the question of intent in taking possession into one of law upon the evidence, and thus take it wholly from the jury. There was evidence enough given (and some attempted to be given, but excluded) bearing upon the question as one of fact, to require it to be submitted to the jury. The court, however, ruled that there was but a single question to be so submitted to the jury, and that was one as to the amount of damages.

The court in its charge said: "There is a difference of opinion between the learned counsel for the defendant and myself, at the very outset of this case, as to the questions which are to be submitted to you, and as to the liability of the defendant in this case. For the reasons which I stated yesterday, it seems to me there is but one question which you are to determine, and that is the question as to the value of the interest of the plaintiffs in the Francis Skiddy on the 25th of November, 1864, at the time she was converted to their own use by these gentlemen."

And again the learned judge said: "Now, as I was remarking,

the simple question for you to determine is the damages which the plaintiffs have suffered by the wrongful act of the defendants. It was claimed on the part of the counsel for the defendants that there was some question as to when this conversion took place, as to whether it was a conversion when the boat was lying in the stream near Albany, or whether it was a conversion when they put the joiner work and the engine, which they took from that boat, into the Dean Richmond. Now, gentlemen of the jury, as I decided yesterday, the action of the defendants in taking possession of that boat as they did, without any notice or any consultation with their co-owners, was an act in itself of conversion, and made them liable to them for the value of that property, then, there and at that time. They were bound, before they were going to destroy this property, before they were going to dispose of it in such a way that it could not be used for the purpose for which it had been used, to notify, consult and give the other owners an opportunity to do that which they thought best for the purpose of preserving their property; and when they acted without any regard to the rights of the minority owners, they acted in their own wrong; they became wrong-doers, and they are responsible to the plaintiffs in this action for that wrong which they perpetrated against them."

To these portions of the charge exceptions were duly taken. We should feel inclined to construe these portions of the charge as meaning in substance a taking of possession *with intent to destroy the boat.* But that construction cannot be given, inasmuch as the learned judge took the question of intent altogether from the jury, and reduced their consideration of the case to one simply of damages. It is not just to the defendant to say that the submission of the single question of damages to the jury was acquiesced in on its part, for after the charge was given the defendant requested the court to charge among other things as follows: " That if the jury believed that it was doubtful whether the Skiddy could be raised before the river was frozen over, and there was danger that she would be materially damaged or destroyed by the ice and freshets, and that the defendant thus believing, deemed it to be for the interest of the owners of the vessel to take out and remove the engine and the other parts and appurtenances, which were taken out and removed, then the act of the defendant in so doing was not

a conversion, and the only damages recoverable by the plaintiffs are two-tenths of the value of the property after it was thus taken out and removed, with interest."

The court refused so to charge and defendant excepted.

The court was also requested to charge : " That if the Skiddy could not be raised before the close of navigation on the river, and there was great danger that she would be destroyed by the ice or freshets, then it was the duty of the defendant to save as much of the vessel and its appurtenances as possible, by taking out and removing such parts and portions as could be removed, and in so doing it was not guilty of a conversion of the vessel."

The court refused so to charge and defendant excepted.

These requests seem to us to strip the case of all pretext that the defense assented to the submission of the single question of damages to the jury, except in so far as that question related to the conversion of the property subsequent to its being taken from the vessel and brought to New York, and there afterwards used as has been stated.

We are at a loss to see on just what ground the question of the intention with which the defendant took possession of the boat, as she lay stranded in the river, can be withheld from the jury, for we do not see how the taking of possession by the owner of eight-tenths of the boat, with a view in good faith to save as much as possible from what was supposed to be in imminent danger of total loss, could be lawfully construed into a conversion of the other two-tenths. The right of the defendant to take possession, and to control and use the boat as such owner, was a perfect one in law and did not subject them to an action of this character ; and if the jury had found, upon a submission of the question of the motives and purpose with which they took possession, favorably to the defendants theory, the case would at once have been reduced to a consideration of the damages for the subsequent conversion of the portion of the boat so saved and of the hull when sold.

There were various other requests made by the defendant on the subject of damages which were refused and exceptions taken, which, it seems to us, were not properly disposed of, but we are not inclined to consider them in detail.

The court upon the question of damages did submit for the jury to

consider the question, whether, in consequence of the approaching cold weather there was any chance of getting the boat out of its position, and how much her value as a steamboat was affected by the circumstance that the river was likely to close within a short space of time. This was well enough so far as it went, because that consideration was one that would more or less affect her value as a steamboat at the time of the defendants taking possession of her in the manner which the learned judge held was, in itself, a conversion. Having held that the act of taking possession was in itself a tort which subjected the defendant to this action, he then charged that upon this question of condition, all the presumptions were against the defendant, and against its theory of the feasibility of raising and repairing her before the closing in of winter, because, as the learned judge said, "they are the wrong-doers and must excuse themselves, and every presumption is in favor of the plaintiffs, and it is their duty to establish to your satisfaction that the boat could not be raised."

As in our view, the mere and naked act of taking possession without regard to defendants intention in so doing was no conversion, the charge cannot of course with propriety be sustained.

We reach, with regret, the conclusion that there must inevitably be a new trial of this case. The conduct of the defendant was in any view oppressive. It assumed practically to act without respecting the rights of the plaintiffs, and with a degree of indifference to such rights that naturally would excite the indignation of courts and juries, still the case must be tried with a view to settled legal principles, and we feel constrained, therefore, to reverse the judgment and remand the case for a new trial, costs of both parties of this appeal to abide the event.

BRADY and BARRETT, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide the event.